## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RICHARD ANTHONY,** | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-01558 (TNM) |
| **FEDERAL BUREAU OF PRISONS**, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

Richard Anthony, proceeding *pro se*, sues the Federal Bureau of Prisons under the Freedom of Information Act for copies of complaints he submitted to prison officials as well as documents about a correctional officer's alleged misconduct.  BOP released copies of Anthony's complaints with minor redactions.  But as to the alleged misconduct, BOP issued a *Glomar* response, refusing to confirm or deny the existence of any responsive documents.  BOP then moved for summary judgment on mootness and exhaustion grounds.  The Court granted this motion in part.  BOP now files a renewed motion for summary judgment, arguing that it satisfied its FOIA obligations and that the *Glomar* response was proper.  In this second time around, the Court grants BOP's motion for summary judgment in full.

### I.

Anthony is a federal inmate at United States Penitentiary Atlanta.  Decl. of Richard Anthony (Anthony Decl.) ¶ 2, ECF No. 33 pp. 8–11.  He was previously at Federal Correctional Institution Oakdale and FCI Talladega Camp.  *Id*.  In September 2021, Anthony sent BOP a FOIA request seeking "copies of any and all documents generated by [BOP] regarding FCI

Oakdale Officer Ms. P. Lemieux's misconduct in 2018." Ex. 1 (FOIA request), ECF No. 1-2.

He also requested copies of "Administrative Remedies" (i.e., complaints) he submitted to the

prison. *Id*. In response, BOP produced Anthony's complaints. This amounted to four pages of

unredacted documents and two pages with redactions of names of BOP personnel. Ex. D, ECF

No. 20-4 pp. 13–18. In an accompanying letter, BOP issued a *Glomar* response to Anthony's

request for documents relating to Officer Lemieux's alleged misconduct, stating that it could

neither confirm nor deny their existence. *See* Ex. C, ECF No. 20-4 pp. 9–10.

BOP first moved for summary judgment in November 2022, contending that Anthony

failed to exhaust his administrative remedies and that part of his FOIA request was moot. Def.'s

Mot. for Summary Judgment (MSJ), ECF No. 20. The Court granted the motion with respect to

the documents produced in full. *Anthony v. BOP*, No. 22-cv-01558 (TNM), 2023 WL 3600230,

at *4 (D.D.C. May 23, 2023). But it found that there was a genuine dispute of material fact as to

whether Anthony had exhausted his administrative remedies. So it denied summary judgment on

the remaining claims. *Id*. at 3. The Court ordered BOP to renew its motion within 30 days with

the updated information. *Id*. at 4. BOP then filed this renewed motion in July 2023, and it is ripe

for decision.

## II.

To prevail at summary judgment, the moving party must show that "there is no genuine

dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[T]he vast

majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S.

Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Under FOIA, agencies must produce relevant requested documents "unless the documents fall within one of nine enumerated exemptions." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021). To obtain summary judgment, the agency must "prov[e] the applicability of claimed exemptions." *ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011). Typically, it does so through declarations or affidavits describing why the FOIA exemption applies. *See id.* The Court may grant summary judgment solely based on the agency's affidavits or declarations "if they contain reasonable specificity of detail . . . and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017) (cleaned up).

Because Anthony proceeds *pro se*, the Court "liberally construe[s]" his filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Still, Anthony must show that a genuine issue of material fact exists as to whether the agency has wrongfully withheld records. *See* Fed. R. Civ. P. 56(a).

## III.

Two issues remain unresolved from the Court's initial summary judgment ruling. First, whether BOP's *Glomar* response to Anthony's request for investigatory documents was proper. And second, whether BOP rightly redacted employees' names in the documents it disclosed. The Court addresses these issues in turn.

## A.

Consider first whether BOP's *Glomar* response was proper. FOIA has "a general philosophy of full agency disclosure." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989). But agencies can withhold certain information—such as classified information, trade secrets, or personnel and medical files—under FOIA's nine statutory

exemptions.  *See* 5 U.S.C. § 552(b)(1)–(9).  In most applications of these exemptions, the agency admits the existence of responsive documents but withholds any exempt content.  *Roth v. DOJ*, 642 F.3d 1161, 1178 (D.C. Cir. 2011) (describing *Glomar* responses as "an exception to the general rule").

In some cases, though, the agency's mere acknowledgment that responsive records exist "would itself cause harm cognizable under a FOIA exception."  *PETA v. Nat'l Institutes of Health*, *Dep't of Health & Hum. Servs.*, 745 F.3d 535, 540 (D.C. Cir. 2014) (cleaned up).  To avoid this dilemma, the agency "refuse[s] to confirm or deny its possession of responsive documents."  *Id.* at 539.  This is called a *Glomar* response—so named because the CIA refused to confirm or deny the existence of records about a ship called the *Hughes Glomar Explorer*, which it had secretly planned to use to recover a sunken Soviet submarine.  *See Phillippi v. CIA*, 655 F.2d 1325, 1329 (D.C. Cir. 1981).

*Glomar*'s debut was fit for a Hollywood spy flick.  But the doctrine applies to more mundane matters, too.  To justify a *Glomar* response, the agency must show only that "the fact of the existence or nonexistence of agency records falls within a FOIA exemption."  *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).  The Court then evaluates *Glomar* responses by applying the "general exemption review standards established in non-*Glomar* cases."  *Id.*  If the *Glomar* response is justified, "the agency need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents."  *See PETA*, 745 F.3d at 540.

At the summary judgment stage, courts rely on agency affidavits to assess whether the *Glomar* response was proper.  *See PETA*, 745 F.3d at 540.  As always, the affidavit "must

contain reasonable specificity of detail rather than merely conclusory statements and cannot be called into question by contradictory evidence in the record." *Id*. (cleaned up).

Since FOIA cases live or die by the agency's declaration, the Court must address any objections to that declaration at the outset.  In this case, Anthony objects to the BOP's supporting declaration because it was prepared by a BOP employee who, Anthony argues, "is in the worst position to make an objective assessment."  Pl's Resp. in Opp'n to Def's MSJ (Opp'n) 2, ECF No. 33.  To the contrary, BOP's declarant, Shelly Emberton, is qualified to attest to BOP's review of Anthony's request.  As part of her official duties, Emberton coordinates BOP's response to FOIA requests, and she personally reviewed the requests and documents in this case. Decl. of Shelly Emberton (Emberton Decl.) ¶¶ 1–2, ECF No. 30-1.  Emberton therefore satisfies the personal knowledge requirement of Federal Rule of Civil Procedure 56(e) and is competent to testify to the matters stated in the declaration. *See Pinson v. DOJ*, 160 F. Supp. 3d 285, 294 (D.D.C. 2016) (explaining that declarant must attest to her "personal knowledge of the procedures used in handling [a FOIA] request and [her] familiarity with the documents in question").  Since Anthony has not otherwise provided evidence of "agency bad faith," the Court will rely on Emberton's Declaration in ruling on summary judgment. *See Aguiar*, 865 F.3d at 735.

Now consider whether the stated exemptions apply.  As the Emberton Declaration explains, BOP justifies its *Glomar* response under FOIA Exemptions 6 and 7(C).  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  And Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be

expected to constitute an unwarranted invasion of personal privacy." *Id*. § 552(b)(7)(C).

"Exemption 7(C)' s privacy language is broader than the comparable language in Exemption 6."

*Reporters Comm.*, 489 U.S. at 756.  And courts typically limit their analysis to Exemption 7(C)

so long as all the requested documents fall within its scope.  *See, e.g.*, *PETA*, 745 F.3d at 54.

To prove Exemption 7(C) applies, BOP must first establish that the records withheld

were "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7)(C).  It must then "weigh

the public interest in the release of information against the privacy interest in nondisclosure."

*Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003).

Generally, "if the investigation is for a possible violation of law, then the inquiry is for

law enforcement purposes." *Jefferson v. DOJ*, 284 F.3d 172, 177 (D.C. Cir. 2002)*.*  An agency's

internal investigation also falls under Exemption 7(C) if it focuses "directly on specifically

alleged illegal acts . . . which could, if proved, result in civil or criminal sanctions." *Kimberlin v.

DOJ*, 139 F.3d 944, 947 (D.C. Cir. 1998) (cleaned up).  But internal investigations are not

exempt from disclosure when the agency is "acting as the employer" and "simply supervis[ing]

its own employees." *Id*. (cleaned up).  Ultimately, "the purpose of the investigatory files is the

critical factor." *Jefferson*, 284 F.3d at 177 (cleaned up).

Anthony's FOIA request seeks "information compiled for law enforcement purposes."

The request specifies "any and all documents" relating to the correctional officer's "misconduct

in 2018."  FOIA Request at 1.  It also notes that the documents "should include but are not

limited to the misconduct allegations made by inmates regarding sexual misconduct, introduction

of contraband, and drug sales." *Id*.  Documents addressing these allegations touch on "illegal

acts" that could result in civil or criminal sanctions and thus fall within Exemption 7(C). *See*

Emberton Dec. ¶ 9 n.3.

Still, the Court notes that Anthony's request sweeps broadly, and that in some cases, documents relating to misconduct investigations fall outside the scope of Exemption 7(C). *See Bartko v. DOJ*, 898 F.3d 51, 66 (D.C. Cir. 2018). Anthony never objects to BOP's application of Exemption 7(C) as the basis for its *Glomar* response. Nor does he argue that his request includes documents that were not compiled for law enforcement purposes. So the Court considers any objections to the application of Exemption 7(C) conceded. *See Davis v. Transp. Sec. Admin.*, 264 F. Supp. 3d 6, 10 (D.D.C. 2017). Nevertheless, the Court concludes that even if Exemption 7(C) does not apply to all the requested documents, BOP's *Glomar* response was proper because disclosure "would constitute a clearly unwarranted invasion of personal privacy" under Exemption 6. 5 U.S.C. § 552(b)(6).

Consider the BOP's privacy interest. In applying Exemption 7(C), the Circuit has repeatedly "recognized the 'substantial' privacy interest held by 'the targets of law-enforcement investigations . . . in ensuring that their relationship to the investigations remains secret.'" *PETA*, 745 F.3d at 541. The mere mention of a person's name in a law enforcement file "can engender comment and speculation and carries a stigmatizing connotation." *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990). Exposure of derogatory information relating to a guard in a prison setting could even raise safety and security issues. Such a privacy interest arises not only with criminal investigations, but also with investigations of professional misconduct. *See Jefferson*, 284 F.3d at 180 (finding prosecutor had privacy interest in avoiding disclosure of investigation of prosecutorial misconduct); *McCutchen v. Dep't of Health & Hum. Servs.*, 30 F.3d 183, 187 (D.C. Cir. 1994) (finding researchers had privacy interest in avoiding disclosure of investigation into plagiarism and fabrication of research results). Since Anthony's FOIA request seeks information that would reveal whether a correctional officer has been investigated for

potentially criminal misconduct, BOP has shown that disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption 7(C).

But even if some of Anthony's requested documents were not "compiled for law enforcement purposes," Exemption 6 still applies.  And under Exemption 6, the Circuit has recognized that a "[government] employee has at least a minimal privacy interest in his or her employment history and job performance evaluations." *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984).  "That privacy interest arises in part from the presumed embarrassment or stigma wrought by negative disclosures." *Id*.

The disclosures sought here would give rise to similar privacy concerns.  As the Emberton Declaration explains, disclosure of documents related to an internal misconduct investigation could subject the correctional officer to "targeted attempts at compromise or manipulation in the conduct of their law enforcement duties." *Id*. ¶ 13.  Release of internal investigation materials could further lead to "unwanted attention" and "harassing inquiries" that would "stigmatize and adversely affect" the correctional officer under investigation. *Id*.  The BOP's stated privacy interest under Exemption 6 is therefore "substantial." *See Telematch, Inc. v. USDA*, 45 F.4th 343, 351 (D.C. Cir. 2022) (Exemption 6 applies if "disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest.").

Turn now to the public interest in disclosure, which the Court weighs for both exemptions.  Disclosure of information implicates the public interest if it is "likely to contribute significantly to public understanding of the operations or activities of the government." *Reporters Comm.*, 489 U.S. at 775 (quoting 5 U.S.C. § 552(a)(4)(A)(iii)).  Anthony barely articulates a public interest in disclosure.  He notes only briefly that disclosure could prevent "predation" on individuals who may be exposed to misconduct.  Opp'n at 4.

As public interests go, this is thin gruel.  This is not to say that protecting federal inmates is a trivial matter.  But unsubstantiated allegations, like those here, have a greater privacy interest and reduced public interest compared to, say, "an in-depth investigation that exposed a pattern of abuses across numerous cases." *Bartko*, 898 F.3d at 67.  And the "mere desire to review how an agency is doing its job, coupled with allegations that it is not, does not create a public interest sufficient to override the privacy interests protected by Exemption 7(C)." *McCutchen*, 30 F.3d at 188.

Even under Exemption 6's looser standard, the balance weighs against disclosure.  The difference between Exemptions 7(C) and 6 is "the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions." *DOD v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 496 (1994).  But Anthony's request does not further any substantial public interest.  So BOP's privacy interest prevails under either analysis. "[S]omething, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).  The BOP's *Glomar* response for documents related to any misconduct investigation was therefore proper.

As an aside, BOP argues that Anthony failed to exhaust his administrative remedies because he did not seek third-party authorization from the officer whose privacy interests are at stake.  But BOP cites no case or regulation requiring a FOIA requester to seek written consent from every person whose privacy interests may be affected.  Indeed, the only authority BOP cites in support of its exhaustion argument suggests the opposite.  *See Taylor v. DOJ*, 257 F. Supp. 2d 101, 112 (D.D.C. 2003).  *Taylor* explained that "because plaintiff has not provided the written consent of either [third party], the agency was prohibited from disclosing the information plaintiff sought, *unless disclosure was required pursuant to the FOIA*." *Id*. (emphasis added).

Since nothing required Anthony to secure written third-part consent, he exhausted his administrative remedies.

Anthony argues that the Court should conduct *in camera* review of the withheld documents.  But when the agency meets its burden by providing detailed affidavits, "*in camera* review is neither necessary nor appropriate."  *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 23 (D.C. Cir. 1984).  BOP has met that burden here.  It has provided "specific information sufficient to place the documents within the exemption category," this "information is not contradicted in the record," and "there is no evidence in the record of agency bad faith."  *ACLU*, 628 F.3d at 626. So *in camera* review is unnecessary.

Last, Anthony argues that the documents relating to the correctional officer's misconduct would be discoverable in a suit seeking to establish liability for invasion of privacy.  Perhaps. But Anthony has not filed such a suit.  And even if he had, the main purpose of FOIA is "not to benefit private litigants or to serve as a substitute for civil discovery."  *Baldrige v. Shapiro*, 455 U.S. 345, 360 n.14 (1982).  Rather, FOIA and civil discovery serve different interests under different legal regimes.  "[T]he discovery provisions under the Federal Rules focus upon the need for the information" while FOIA provides "a broad statutory grant of disclosure."  *Id*. at 360.  The Court therefore declines to construe Anthony's FOIA request as a notice for production of documents in a hypothetical civil case.

**B.**

Now consider whether BOP properly applied Exemptions 6 and 7(C) in redacting the names of BOP personnel from two pages of responsive documents.[1]  BOP explains that it

---

[1]  Anthony does not address BOP's arguments that its search for his administrative complaints was reasonable and that it disclosed all reasonably segregable information.  The Court treats

invoked Exemptions 6 and 7(C) to shield the names of BOP employees "who work in a prison setting" because "disclosure would constitute a clearly unwarranted invasion of their personal privacy and could expose them to harm."  MSJ at 9.

Exemption 7(C) does not apply here.  BOP's declaration does not explain how these documents at issue—Anthony's own administrative complaints—fall within Exemption 7(C)'s scope.  Indeed, BOP does not argue that the administrative complaints here were ever "compiled for law enforcement purposes" as the statute requires.  5 U.S.C. § 552(b)(7)(C).  Nor does Exemption 7(C) sweep so broadly as to include every administrative complaint filed with an agency.  *See Jefferson*, 284 F.3d at 177 (documents compiled as part of the "customary surveillance of the performance of duties by government employees" do not qualify for Exemption 7(C)).

The Court nevertheless concludes that BOP properly redacted the names of prison personnel under Exemption 6 since disclosure would constitute "a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6); *see Judicial Watch, Inc.* v. FDA, 449 F.3d 141, 152 (D.C. Cir. 2006) (Exemption 6 applies to "not just files, but also bits of personal information, such as names and addresses.").  Since Anthony provides no public interest in disclosing identifying information for BOP personnel, any privacy interest weighs against disclosure.  *See Niskanen Ctr. v. FERC*, 20 F.4th 787, 792 (D.C. Cir. 2021) (finding privacy interest outweighed public interest "where the requesting party failed to express how redacted identifying information would advance public understanding").  "In the absence of a legitimate public interest, the private interest in avoiding harassment or violence tilts the scales."  *See id*. at 153.

---

these arguments as conceded.  *See Davis*, 264 F. Supp. 3d at 10.  Regardless, the Court finds that BOP's searches were reasonable and that it disclosed all reasonably segregable material based on the Emberton Declaration.  *See* Emberton Decl. ¶ 26.

**IV.**

For these reasons, the Defendant's Renewed Motion for Summary Judgment will be granted.  A separate order will issue today.

Dated: February 13, 2024

TREVOR N. McFADDEN, U.S.D.J.